UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SIERRA BRANDON,

Plaintiff,

v.

CREDIT ACCEPTANCE CORPORATION,

Defendant.

Case No. 25-cv-13568

Honorable Robert J. White

**ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION**

Plaintiff Sierra Brandon brings this putative class and collective action against Defendant Credit Acceptance Corporation, her former employer, alleging that Defendant failed to pay overtime and other earned wages to Plaintiff and similarly situated employees. (ECF No. 1). Before the Court in this matter is Defendant's motion to compel individual arbitration. (ECF No. 7). The Parties fully briefed the motion, and the Court will decide it without oral argument pursuant to Local Rule 7.1(f)(2). For the following reasons, the Court grants Defendant's motion to compel arbitration.

## I. Background

Per the complaint, Defendant is a Michigan company "that specializes in providing auto insurance," and Plaintiff worked for Defendant as a collections agent from approximately October 2024 to June 2025. (ECF No. 1, PageID.4-5). On November 10, 2025, Plaintiff brought this putative class and collective action, asserting the following claims: (1) violations of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*, for failing to pay overtime to Plaintiff and members of the proposed collective; (2) breach of contract for failing to pay Plaintiff and similarly situated employees agreed-to wages; and (3) unjust enrichment for the same. (ECF No. 1, PageID.17-21).

Defendant now moves to compel individual arbitration pursuant to a mutual alternative dispute resolution (ADR) agreement Plaintiff purportedly entered into as a condition of her employment. (ECF No. 7). The agreement's incorporated policy concerning arbitration provides:

> [A]ny and all claims covered by this ADR Policy and Procedure, not resolved [through negotiation or mediation], shall be resolved solely and exclusively through arbitration as provided herein. Except as provided elsewhere in this ADR Policy and Procedure, neither one of us will initiate or prosecute any lawsuit . . . that is in any way related to any claim covered by this ADR Policy and Procedure. Either party may compel arbitration pursuant to this ADR Policy and Procedure . . . .

(ECF No. 7-3, PageID.88).

## II. Legal Standard

In deciding a motion to compel arbitration, a court "must determine whether the dispute is arbitrable, meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of the agreement." *Mazera v. Varsity Ford Mgmt. Servs., LLC*, 565 F. 3d 997, 1001 (6th Cir 2009). Stated somewhat differently and with greater nuance, (1) the court "must determine whether the parties agreed to arbitrate;" (2) "it must determine the scope of that agreement;" (3) "if federal statutory claims are asserted, it must consider whether Congress intended those claims to be non[-]arbitrable;" and (4) "if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration."[1] *McGee v. Armstrong*, 941 F. 3d 859, 865 (6th Cir. 2019).

"Mandatory arbitration agreements in the employment context are governed by the Federal Arbitration Act, which evidences a strong policy preference in favor of arbitration." *Mazera*, 565 F. 3d at 1001. "Although the Federal Arbitration Act requires a court to summarily compel arbitration upon a party's request, the court

[1] The United States Supreme Court recently held that "[w]hen a federal court finds that a dispute is subject to arbitration, and a party has requested a stay of the court proceeding pending arbitration, the court does not have discretion to dismiss the suit on the basis that all the claims are subject to arbitration." *Smith v. Spizzirri*, 601 U.S. 472, 475-76 (2024). Defendant here requests a stay pending arbitration, so the Court cannot dismiss the case even if all claims are arbitrable.

may do so only if the opposing side has not put the making of the arbitration contract 'in issue.'" *Boykin v. Family Dollar Stores of Michigan, LLC*, 3 F. 4th 832, 835 (6th Cir. 2021) (quoting 9 U.S.C. § 4 ("[U]pon being satisfied that the making of an agreement for arbitration . . . is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. . . . . If the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof.")).

Where the non-movant disputes the existence of an agreement to arbitrate, the district court is to evaluate whether the non-movant has "adequately challenged the making of the contract using the standards that apply on summary judgment." *Boykin*, 3 F. 4th at 835.

Under these standards, "the movant asserting the existence of a contract[] must initially carry its burden to produce evidence that would allow a reasonable jury to find that a contract exists." *Chaudhri v. StockX, LLC*, 19 F. 4th 873, 881 (6th Cir. 2021). "[I]n order to show that the validity of the agreement is 'in issue' [under 9 U.S.C. § 4], the party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate." *Mazera*, 565 F. 3d at 1001 (second alteration in original). "If a reasonable finder of fact could conclude that no valid agreement to arbitrate exists, the issue is subject to resolution by a jury." *Id.* (quotation marks and citation omitted). In addressing these questions, this Court

applies state-law principles governing contract formation. *Chaudhri*, 19 F. 4th at 881.

## III. Analysis

Plaintiff does not contest that she agreed to the signed ADR agreement and policy, including the included arbitration provisions. Plaintiff argues, however, that (1) the arbitration agreement is invalid and unenforceable due to unconscionability; and (2) this dispute falls outside the agreement's scope. (ECF No. 9, PageID.117-25).

### A. Unconscionability

"Arbitration agreements are on an equal footing with other contracts and may be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability." *Hines v. Nat'l Ent. Grp., LLC*, 140 F.4th 322, 327 (6th Cir. 2025) (cleaned up). "An unconscionable arbitration agreement is unenforceable." *Id.* And to determine whether an agreement to arbitrate is unconscionable, courts apply state contract law. *Id.*

In Michigan,[2] "[f]or a contract or a contract provision to be considered unconscionable, both procedural and substantive unconscionability must be

[2] Defendant, which operates out of the state of Michigan, cites in part to Michigan caselaw governing both arbitration agreements and contracts generally in moving to compel arbitration, and Plaintiff does not contest that the purported agreement is governed by Michigan law. And while the ADR agreement lacks any specific

present."[3] *Liparoto Constr., Inc. v. Gen. Shale Brick, Inc.*, 284 Mich. App. 25, 30 (Mich. Ct. App. 2009). And "federal courts consistently observe that Michigan law requires a party to demonstrate both procedural and substantive unconscionability." *Whirlpool Corp. v. Grigoleit Co.*, 713 F.3d 316, 321 (6th Cir. 2013); *see also Weber Auto. Corp. v. Metaldyne LLC*, No. 347157, 2020 Mich. App. LEXIS 2991, at *15 (Mich. Ct. App. Apr. 23, 2020) (unpublished) ("[E]ven if plaintiff could establish substantive unconscionability, plaintiff's complaint was insufficiently pleaded to support procedural unconscionability. Both are required.").

Here, although Plaintiff argues that numerous arbitration provisions in the ADR agreement are substantively unconscionable, she does not even attempt to establish procedural unconscionability. In fact, Plaintiff cites *ShaZor Logistics, LLC v. Amazon.com, LLC*, 628 F. Supp. 3d 708 (E.D. Mich. 2022), to argue that "arbitration provisions may be invalidated when they are substantively or procedurally unconscionable, and either form of unconscionability alone is sufficient to render an agreement unenforceable." (ECF No. 9, PageID.119).

---

choice-of-law provision, certain provisions therein implicitly contemplate the contract arising under Michigan law. (See ECF No. 7-3, PageID.84 ("nothing herein prevents me from filing a charge or complaint with the Michigan Department of Civil Rights"). Accordingly, despite neither party clearly briefing the issue, the Court will apply Michigan law in this case.

[3] "Procedural unconscionability exists where the weaker party had no realistic alternative to acceptance of the term. Substantive unconscionability exists where the challenged term is not substantively reasonable." *Liparoto*, 284 Mich. App. at 30.

As stated in Defendant's reply brief, however, *ShaZor* applies Washington state law. *ShaZor*, 628 F. Supp. at 713. Plaintiff never mentions this nuance, nor does she ever claim that the agreement at issue is governed by Washington law. *See also* footnote 2. Accordingly, because Plaintiff fails to demonstrate procedural unconscionability—as required under Michigan law, which applies in this case—the Court cannot conclude that the complained-of provisions are unconscionable. *See Beer v. Kropf Constr. Consulting, LLC*, No. 342666, 2019 Mich. App. LEXIS 1827, at *6 n. 2 (Mich. Ct. App. May 9, 2019) (unpublished) ("where, as here, the plaintiff cannot show procedural unconscionability, we need not address substantive unconscionability").

Having rejected Plaintiff's unconscionability argument—and recognizing that she does not otherwise contest validity or enforceability of the arbitration provisions—the Court concludes that the parties agreed to arbitrate those claims specified in the ADR agreement and policy, and the agreement to arbitrate is valid and enforceable. Stated differently, Defendant, providing the signed ADR agreement and accompanying declaration (*see* ECF Nos. 7-3 – 7-4), has carried its burden to produce evidence that would allow a reasonable jury to find that a contract exists, and Plaintiff fails to show a genuine issue of material fact as to the validity of the agreement to arbitrate. *See Chaudhri*, 19 F. 4th at 881; *Mazera*, 565 F. 3d at 1001. The Court now turns to the scope of the parties' agreement.

**B. Scope**

The ADR policy and arbitration provisions therein generally cover "disputes arising out of or related to . . . employment with the Company." (ECF No. 7-3, PageID.86). Further, the ADR agreement itself covers "such employment-related dispute[s] involving any claimed adverse employment action . . . [asserting], in part or whole, wrongful action by the Company, which includes common law tort claims and/or . . . violation[s] of certain described statutes/laws," including the FLSA. (*See* ECF No. 7-3, PageID.84, 86). As relevant here, the arbitration agreement exempts from coverage "[c]laims with an aggregate value of less than one thousand ($1000) dollars." (ECF No. 7-3, PageID.86).

As an initial matter, each of Plaintiff's three distinct claims essentially involve Defendant's failure as an employer to properly and adequately compensate her and similarly situated employees. These claims thus all clearly involve claimed adverse employment action alleging wrongful conduct by Defendant, "the Company." And the arbitration agreement broadly includes the types of statutory and common law tort claims at issue.

Plaintiff argues, however, that her "[c]laim" is exempt from arbitration because her potential damages for unpaid overtime at most would be $328.13 (or $650.26 with the inclusion of liquidated damages), which does not meet the arbitration agreement's minimum monetary threshold. (ECF No. 9, PageID.117-19).

The Court disagrees. Considering the *aggregate* value of all Plaintiff's claims as required by the exemption at issue, the $1,000 threshold is clearly met.

For background, the complaint generally alleges "Defendant's systemic failure to compensate its employees for all hours worked, including overtime hours worked at the appropriate overtime rate . . . ." (ECF No. 1, PageID.1). "Throughout their employment with Defendant, Plaintiff and other Agents were required to work substantial amounts of uncompensated, off-the-clock time as part of their job duties." (ECF No. 1, PageID.5). According to Plaintiff, Defendant required her and these employees to perform substantial work each day before clocking in and after clocking out of its timekeeping system, resulting in a maximum of 30 minutes per day of unpaid time.[4] (ECF No. 1, PageID.6-11).

The crux of Plaintiff's FLSA claim is to remedy her and similarly situated employees for the unpaid *overtime only* during those weeks they worked 40 hours or more. (*See* ECF No. 1, PageID.18 ("At all times relevant to this action, Defendant . . . failed to pay these employees the federally mandated overtime compensation for all services performed. . . . In workweeks where Plaintiff and the proposed Collective members worked 40 hours or more, the uncompensated off-the-clock work should have been paid at the federally mandated rate of 1.5 times each

[4] The specific unpaid time in Plaintiff's complaint is approximated and alleged to vary slightly by day, but both parties accept assuming 30 minutes per day for the present purposes.

employee's regularly rate of pay.")). In contrast, Plaintiff's tort claims apparently seek to remedy those allegedly unpaid wages regardless of whether the employee worked more than 40 hours to be entitled overtime. (*See* ECF No. 1, PageID.19 ("Defendant had binding and valid contracts with Plaintiff and the Rule 23 Nationwide Class to pay for *each* hour worked at a pre-established (contractual) regular hourly rate . . . .") (emphasis added)).

In support of her proposed maximum amount of potential damages, Plaintiff relies on the offer letter attached to Defendant's motion to compel arbitration. Based on the offer letter, Plaintiff worked for more than 40 hours each week during an initial 5-week training period, then she worked at least 3 9-hour days each week thereafter, all at a rate of $17 per hour. (*See* ECF 7-2).

To reach her proposed $328.12 maximum actual damage amount, Plaintiff accounts only for the initial 5-week training period and the unpaid overtime allegedly accrued therefrom. But to consider the aggregate of all Plaintiff's claims, specifically concerning Plaintiff's additional tort claims seeking recovery regardless of overtime under the FLSA, the Court must also account for the allegedly unpaid daily wages from after the training period even when Plaintiff worked a three-day schedule less than 40 hours per week.

Given the period of Plaintiff's employment from October 2024 to June 2025, she continued working for Defendant for at least 25 weeks following the initial

training period.[5] Accepting 30 minutes of daily unpaid wages that continued "[t]hroughout [Plaintiff's] employment with Defendant," (*see* ECF no. 1, PageID.5), her actual damages for the allegedly unpaid wages arising after the initial training period could be as high as $656.25 (30 minutes per day, 3 days per week, for 25 weeks, at $17 per hour). Adopting Plaintiff's own calculation concerning overtime damages, her total actual damages in this case are potentially $984.37.

Further, while this potential actual damage amount falls just below the threshold at issue, Plaintiff, in addition to actual damages under the FLSA, seeks "an equal amount for liquidated damages, prejudgment interest, and attorneys' fees and costs." (ECF No. 1, PageID.3; *see also id.* at PageID.18 ("The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, Plaintiff and the proposed Collective members are entitled to their unpaid overtime, plus an additional equal amount in liquidated (double) damages, plus costs and reasonable attorneys' fees.")).

Given this addition, the Court concludes that Plaintiff's claims in the aggregate clearly exceed the monetary minimum necessary for coverage under the arbitration agreement. In sum, Plaintiff's claims in this matter all fall within the agreement's scope.

---

[5] This is the most favorable approximation for Plaintiff, assuming she began working at the very end of October 2024 and left by the start of June 2025.

**C. Remaining Issues**

Concerning whether Congress intended Plaintiff's federal statutory claim(s) under the FLSA to be non-arbitrable, the Sixth Circuit has concluded otherwise. *See Gaffers v. Kelly Servs.*, 900 F.3d 293, 295-97 (6th Cir. 2018) (holding that arbitration agreements are enforceable with respect to FLSA claims). And because all Plaintiff's claims in the action are subject to arbitration and Defendant requests a stay, the Court shall stay all proceedings pending arbitration.

Lastly, the Court concludes that Plaintiff must arbitrate her claims individually, without the class and collective claims asserted here. *See Huffman v. Hilltop Cos., LLC*, 747 F.3d 391, 398 (6th Cir. 2014) ("the question of whether an arbitration agreement permits classwide arbitration is a gateway matter, which is reserved for judicial determination unless the parties clearly and unmistakably provide otherwise"). And when "[an] arbitration clause nowhere mentions classwide arbitration," it "does not authorize classwide arbitration, and . . . the plaintiff[] must proceed individually." *Id.* at 398-99. Here, as in *Huffman*, the ADR agreement nowhere mentions classwide or collective arbitration, so the Court concludes as a gateway matter that Plaintiff must proceed individually.

* * *

For the reasons given, the Court ORDERS that Defendant's motion to compel arbitration (ECF No. 7) is GRANTED.

IT IS FURTHER ORDERED that the case shall be stayed pending arbitration of all Plaintiff's claims.

Dated: August 24, 2026

s/Robert J. White
Robert J. White
United States District Judge